# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-00023-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    STEVEN PATRICK MCCONNELL,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Melissa Hindman, Assistant United States Attorney for the District of Colorado, and the defendant, Steven Patrick McConnell, personally and by counsel, Natalie Stricklin, Assistant Federal Public Defender, submit the following Plea Agreement.

## I. PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this Plea Agreement are not binding on the Court. Because the government is agreeing to dismiss two counts of the Indictment at the time of sentencing, the defendant will be permitted to withdraw his plea of guilty if this Court rejects this plea agreement pursuant to Rule 11(c)(1)(A) and (c)(5) of the Federal Rules of Criminal Procedure.

1

Court Exhibit

1

A. **Defendant's Obligations**

1. **Count of Conviction**

The defendant agrees to plead guilty to Count One of the Indictment charging a violation of 18 U.S.C. § 2251(a) and (e), Production of Child Pornography.

2. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 2251(a) and (e);

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 44; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

3. **Defendant's Abandonment of Right, Title, and Claim to Seized Property**

The government and the defendant hereby agree that any property seized from the defendant, and currently in the custody and/or control of the Federal Bureau of Investigation (FBI), was properly seized. Further, the defendant is waiving his ownership and hereby relinquishes all claims, title, and interest the defendant has in such property, specifically: (1) one black Android cell phone bearing the IMEI number 990017121544908 and (2) one Black Nuu cell phone bearing the IMEI number 354169110303667 to the United States of America with the understanding and consent that the FBI, or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the Plea Agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the sole and rightful owner of the black Android cell phone bearing the IMEI number 990017121544908 and the rightful owner of the Black Nuu cell phone bearing the IMEI number 354169110303667, and that the defendant hereby voluntarily abandons all right and claim to this property.

4. **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to, one black Android cell

4

phone bearing the IMEI number 990017121544908 and one Black Nuu cell phone bearing the IMEI number 354169110303667. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

B. **Government's Obligations**

### 1. **Dismissal of Charges and Additional Charges**

If the defendant enters an unconditional plea of guilty to Count One of the Indictment and otherwise fulfills all obligations outlined above, the government will dismiss Counts Two and Three of the Indictment at the time of sentencing and agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

### 2. **Sentencing Position**

The government intends to recommend a sentence of 360 months, consistent with the guideline range for an offense level of 44, as calculated in this agreement. Should Probation or the Court determine that the guideline range is lower, the government reserves its ability to seek an upward variance to the extent necessary

to achieve a sentence consistent with the sentencing range calculated in this agreement.

3. **Acceptance of Responsibility**

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

## II. **ELEMENTS OF THE OFFENSE**

The parties agree that the elements of the crime of Production of Child Pornography, 18 U.S.C. § 2251(a), are as follows:

*One*: The defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

*Two:* That the defendant acted with the purpose of producing a visual depiction of such conduct; and

*Three*: That the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or that the visual depiction was actually transported or transmitted using any

means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.[1]

"Minor" means any person under the age of eighteen years.[2]

"Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[3]

"Child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[4]

"Sexually explicit conduct" means actual or simulated:

1.  sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or

2.  bestiality; or

3.  masturbation; or

4.  sadistic or masochistic abuse; or

5.  lascivious exhibition of the anus, genitals, or pubic area of any person.[5]

---

[1] 18 U.S.C. § 2251(a); Fifth Circuit Criminal Pattern Jury Instruction 2.84 [modified]. The Tenth Circuit does not have a pattern instruction for this crime.
[2] 18 U.S.C. § 2256(1).
[3] 18 U.S.C. § 2256(5).
[4] 18 U.S.C. § 2256(8)(A).
[5] 18 U.S.C. § 2256(2)(A).

### III. **STATUTORY PENALTIES**

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2251(a), Production of Child Pornography, is not less than 15 years imprisonment, not more than 30 years imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. § 2251(e). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2251(a), the term of supervised release is not less than 5 years and up to a term of life. Defendant will be required to pay a $100 special assessment fee. Defendant may be required to pay a $5,000 special assessment unless the Court finds that the defendant is indigent. 18 U.S.C. § 3014. This special assessment currently expires on September 11, 2022. If the defendant is sentenced by that date or the special assessment is renewed by Congress it will still apply; if the defendant is sentenced after September 11, 2022 and the special assessment is not renewed by Congress, the special assessment will not apply. Defendant will be required to pay a special assessment of no more than $50,000 for his conviction for child pornography production as defined by 18 U.S.C. § 2259(c)(1), which includes offenses under 18 U.S.C. § 2251(a). 18 U.S.C. § 2259A(a)(3).

The parties do not believe the following provisions are applicable, but if the defendant has been previously convicted under Chapters 110, 71, 109A, 117, or under 18 U.S.C. § 1591, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward, or sex trafficking of

8

children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 25 years nor more than 50 years imprisonment, not more than $250,000 fine, or both; with two such convictions, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 35 years nor more than life imprisonment, not more than a $250,000 fine, or both.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury. If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

### A. Future Violations of Supervised Release

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 5 years without credit for pre-release imprisonment or time previously served on post-release supervision.

### B. Registration under the Sex Offender Registration and Notification Act

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and

9

that those requirements may apply throughout his life. The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was convicted, where he resides, where he is employed, and where he is a student. The defendant understands that the requirements for registration include providing his name, residence address, the names and addresses of any places where he is or will be an employee or a student, and information relating to intended travel outside the United States, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

C. **Restitution**

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(c)(2) and (4) as may be proved by the government or

10

stipulated to by the parties. Defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offense(s) to which defendant is pleading guilty. For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 2259(c)(4), and the term "full amount of the victims' losses" is defined in 18 U.S.C. § 2259(c)(2). Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the presentence investigation report.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source. Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. Defendant understands full restitution will be ordered regardless of defendant's financial resources. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea. Defendant further agrees to comply with any restitution order entered at the time of sentencing. Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate. Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

11

## V. **STIPULATION OF FACTS**

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial:

On or around December 28, 2021, the defendant, Steven Patrick McConnell, was using the app Telegram to talk to an individual who was an undercover agent with the FBI. The defendant was using the Telegram user account "lovedick1" with the vanity name "Stiffy Wonder." The defendant told the undercover that he had access to a 6-year-old minor male ("Minor #1"). The defendant further stated that he performed oral sex on Minor #1 regularly and intended to do so later that night. The defendant sent the undercover an image of an adult male hand pulling down the underwear of a minor boy to expose the minor's penis and stated that it was Minor #1 depicted in the image.

The undercover agent moved the chat with the defendant to the platform Kik where the defendant used the Kik account with the username "gayman152000" and the vanity name "Spiffy Meow." Another undercover agent ("OCE") communicated with the defendant via Kik. This agent purported to screen the defendant for admission into a Kik group where child pornography would be exchanged. In the course of this conversation, the defendant described his sexual preferences for minor boys and asked if the undercover agent knew of facilities in Colorado where the defendant could purchase boys for the night. During this conversation the defendant also sent photos of himself wearing rainbow-colored pajamas and identified himself as Steve, 31 years old, and living in Colorado. The defendant also sent photos and a video of Minor #1 wearing pajama pants and no shirt while jumping on a bed. Below is an excerpt from this Kik conversation:

| | |
|---|---|
| OCE: | What content do you have for the group as I'm not into bottom feeders sucking content from the group and not contributing. It's a S2R group |
| Defendant: | S2R? I have some pics and videos |
| OCE: | Original content or stock. S2R is share to receive. |
| Defendant: | Little bit of both but the original I have to share when I get the chance because he sleeps next to me sometimes. |
| Defendant: | I know it's not much |
| Defendant: | But I also wanted to ask something |
| OCE: | What? |
| OCE: | And who is he? |
| Defendant: | Are there any facilities in Colorado |
| OCE: | What are you talking about? |
| Defendant: | Boys |
| Defendant: | [sends photos of two minor boys standing next to each other wearing gym shorts and no shirts] |
| Defendant: | Boys that I can buy for 1 night |

Regarding Minor #1, the defendant stated to the OCE, "He lets me suck his penis every night." The defendant identified Minor #1 as a 6-year-old and provided his first

13

name. The OCE then asked about Minor #1's parents and their knowledge of his

activities. The defendant responded as follows:

Defendant:   Um they don't know he is a very curious boy I started to watch porn in
             front of him
OCE:         Ahhh u ain't afraid that he is going to say something
Defendant:   Yes but I think he likes it when I put his penis in my mouth
OCE:         When's the next time u going to get some of that
Defendant:   Possible be Tonight

FBI agents obtained the IP address associated with the defendant's Kik account,

which reconciled to an address in Lochbuie, Colorado where the defendant lived and

had access to Minor #1.

Lochbuie Police and FBI agents responded to the defendant's house later on

December 28, 2021 where they observed the defendant wearing rainbow-colored

pajamas, which were the same clothing depicted in the image he sent to the undercover

agent on Kik. A federal search warrant was obtained for the defendant's bedroom, and

four cellphones and one tablet were recovered.

After waiving his *Miranda* rights, the defendant stated the following: The

defendant said Minor #1 sleeps in bed with him a few nights a week. He said he did use

Telegram and Kik, gave the access code to his phone, and described where his devices

were located. The defendant denied doing anything to Minor #1 and explained that he

claimed to have sexual contact with Minor #1 in chats in order to get images of adult

penises in return. He denied sending child pornography images or any images of Minor

#1. He said he blocks any users who send him pictures of kids. He was asked about

statements to the undercover claiming to perform oral sex on Minor #1, and the

defendant admitted that he had actually done that. He explained that it had been

14

happening since soon after he moved in. He said Minor #1 had seen naked photos of men and was curious. He claimed Minor #1 had initiated sexual contact in several ways and the defendant had stopped it from happening. He then denied that any oral sex or manual stimulation had occurred with Minor #1. He admitted showing pornography to Minor #1. He said when Minor #1 is interviewed, he wouldn't disclose any sexual contact but may lie if he thinks he is in trouble. The defendant didn't want Minor #1 interviewed because it would be traumatizing. He acknowledged his Telegram account but denied that it was his hand or Minor #1 in the images sent by that account. He was shown child pornography of Minor #1 in the context of a chat where the defendant claims to have taken the image. He didn't respond at first, then stated that he "made a mistake." He admitted to taking child pornography images of Minor #1 when Minor #1 was asleep and unaware of it.

Minor #1 was forensically interviewed and disclosed the following: Minor #1 disclosed that the defendant had touched the minor's penis with the defendant's hand and mouth and that the defendant had made Minor #1 touch the defendant's penis with Minor #1's hand. Minor #1 disclosed that these sexual acts occurred on numerous occasions in the defendant's bedroom. Minor #1 was shown images of him taken by the defendant, and Minor #1 said that was not him in the images because he doesn't sleep with his legs spread open as depicted in the image. Minor #1 showed signs of significant trauma.

Minor #1's parents identified their son in several photos, including the images shown to Minor #1 himself. The parents identified Minor #1 based on his body as well

as his underwear, other clothing, blankets, and a sofa in the background of the photos. The parents also explained that the defendant had started staying at their house every weekend on October 17, 2020, and the defendant moved in permanently on December 5, 2020. They further explained that Minor #1 spent time with the defendant, including sleeping in the same bed.

The devices recovered from the defendant's bedroom were analyzed and two devices were determined to contain child pornography. The first device was an Android cell phone, which was manufactured outside the District of Colorado and determined to be the defendant's personal cell phone. This phone was analyzed and contained the following:

- Images and videos of Minor #1 produced by the defendant, including the following images of child pornography and depictions of sexual contact:
    - A video named 1_5145582618330267851.mp4, created on 5/20/21 at 6:43:22 AM, depicting an adult hand pulling back white Fortnite underwear, exposing Minor #1's penis. The adult hand touches Minor #1's penis.
    - A video of Minor #1 clothed while lying down sleeping. An adult hand moves Minor #1's underwear to the side. The adult male rubs Minor #1's penis with one of his fingers. The video pans up and shows Minor #1's face.
    - An image named 1632117533440.jpg, created 9/19/21, which the defendant had sent to the OCE in the Telegram communications. This

image depicts an adult hand that moved underwear aside exposing a penis; it appears to be a penis of a 4 to 6-year-old consistent with Minor #1. The image was intended to elicit a sexual response in the viewer and depicted the lascivious exhibition of the genitals and/or pubic area of the minor depicted.

- An image named IMG_20210711_224633_799.jpg, created 7/11/21, which the defendant had sent to the OCE in the Telegram communications. This image depicts Minor #1 in a blue shirt and blue Fortnite underwear, and an adult hand lifting Minor #1's underwear up exposing Minor #1's penis. The image was intended to elicit a sexual response in the viewer and depicted the lascivious exhibition of the genitals and/or pubic area of Minor #1.

- An image named 1028.jpg, created 8/5/21, which the defendant had sent to the OCE. The image depicts Minor #1 wearing a blue shirt and blue Fortnite underwear, while an adult hand lifts Minor #1's underwear up exposing Minor #1's penis. The image was intended to elicit a sexual response in the viewer and depicted the lascivious exhibition of the genitals and/or pubic area of Minor #1.

- Approximately 1,321 child pornography images and 927 child pornography videos. These included depictions of children as young as toddlers and images depicting sexual bondage of children. Examples of these images and videos include the following:

17

- An image named 5431885804457800842_120.jpg, depicting a naked prepubescent minor boy sitting between a naked adult male's legs. The adult male's erect penis is in the prepubescent boy's mouth.
- A video named 1_4902219046805569787.mp4, depicting a prepubescent naked minor boy lying on a couch with his legs up exposing his penis and anus, crying, with a naked adult male putting his penis in the boy's anus and ejaculating.
- A video named 1_5039531071109071183.MP4, depicting a naked prepubescent boy lying face down over a pillow exposing his penis and anus. A naked adult male is hunched over him with his penis inside the boy's anus.
- An image named -5431885804457801014_120.jpg, depicting a naked prepubescent minor boy in a pillory.[6]
- The Telegram app was installed on the phone and contained group chats in which the defendant participated, direct communications the defendant had with other users, and the exchange of child pornography. The Telegram app on the defendant's cell phone contained the following:
  - Telegram chats with the undercover agent on 12/28/21 in which the defendant sends a child pornography image of Minor #1 in blue underwear and the associated image file with a creation date of 7/11/21 referenced

---

[6] The pillory is a device made of a wooden or metal framework erected on a post, with holes for securing the head and hands, formerly used for punishment by public humiliation and often further physical abuse.

above;

- o Telegram chat on 12/30/20 through 12/31/20 in which the defendant sends two child pornography videos of Minor #1 wearing Fortnite underwear to an unknown individual with a deleted account named "Ungodly Perv". One of these videos was named 1_5145582618330267851.mp4 and depicted an adult hand pulling back Minor #1's white Fortnite underwear, exposing Minor #1's penis while the adult hand touches Minor #1's penis. In this chat, the defendant stated to the other user, "I took it last night."

- o Group chats in which child pornography is received and distributed by the defendant. The earliest distribution is on 9/30/20 when the defendant sends 50 child pornography images to a group. The defendant also sends 20 child pornography images to the group on 5/30/21. On 12/6/21, the defendant sent another image of child pornography depicting a pubescent male who appears to be 12 to 14 years old pulling his pants down exposing his erect penis. The defendant sent this image to a group with the text, "I need a son to have some fun with."

- o A conversation with a user "Perv Daddychun" on Telegram on 11/7/21 through 11/17/21 in which the defendant identified his relationship with Minor #1. The defendant then responded to the user's question regarding what the defendant had done with Minor #1 by stating, "pulled his pants and stuck his pee pee in my mouth when he sleeps."

- o  In several chats, the defendant talks with users who identify themselves to be 14 to 16 years old, and on one occasion, the defendant sent a photo of his penis to a user who stated he was 16 years old.
- The Kik app was installed on the phone and contained the previously described conversations with the undercover agents.

The Nuu cell phone was analyzed, determined to be the defendant's work cell phone, and contained the following:

- Two unique images of Minor #1 partially clothed.
- One video of Minor #1 lying on the defendant's mattress underneath a blanket. Minor #1 is wearing blue camo-patterned underwear that are pulled partially down and he is masturbating himself. The video was created on 11/29/21 at 6:28:35 PM.
- Five other videos and six unique images of child pornography.
- MMS messages that showed the defendant sending images and a video between this Nuu cell phone and his Android cell phone described above.
    - o  On 12/29/21, an image of Minor #1 sitting on the defendant's mattress in front of a laptop wearing only blue camo-patterned underwear was sent from the defendant's Nuu cell phone to his Android cell phone.
    - o  On 12/7/21, a video depicting a minor boy performing oral sex on another minor boy was sent from the defendant's Android cell phone to his Nuu cell phone.
    - o  On 12/7/21, an image of Minor #1 wearing only blue underwear while

20

sleeping with his legs spread apart was sent from the defendant's Android cell phone to his Nuu cell phone.

- The Telegram app was installed on the phone and contained contact or attempted contact with at least six other users between 11/14/21 and 12/22/21 from the defendant's "Spiffy Meow" account associated with this device.

- The Facebook Messenger app was installed on the phone and contained communications with others in which the defendant posed as a young Asian female. The defendant sent nude pictures of a young Asian female to young male users to attempt to elicit nude images from young males.

Defendant admits that Minor #1 had not yet attained the age of 12 years at the time of the offense, the offense involved the commission of a sexual act or sexual contact, and the defendant knowingly engaged in the distribution of child pornography images and videos he produced. The defendant further admits that Minor #1 was in the defendant's custody, care, or supervisory control at the time of the offense. Additionally, the defendant admits that the defendant knew and had reason to know that the child pornography images and videos he produced depicting Minor #1 would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and that such child pornography images and videos were actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce. Further, such child pornography images and videos were produced and transmitted using materials that have been mailed, shipped, and

transported in and affecting interstate and foreign commerce by any means, including
by computer.

## VI. **ADVISORY GUIDELINE CALCULATION**

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

**Offense Level for Count One:**  The base guideline is § 2G2.1.

The base offense level for Production of Child Pornography is 32.  § 2G2.1(a).

Because the offense involved a minor who had not attained the age of twelve years, there is an increase of +4 levels.  §2G2.1(b)(1)(A).

Because the offense involved the commission of a sexual act or sexual contact, there is an increase of +2 levels.  § 2G2.1(b)(2)(A).

Because the offense involved distribution, there is an increase of **+2** levels. §
2G2.1(b)(3).

Because the offense involved a minor who was in the custody, care, or
supervisory control of the defendant, there is an increase of **+2** levels. §
2G2.1(b)(5).

Defendant should receive a decrease in the offense level by **-2** based upon his
acceptance of responsibility. § 3E1.1(a). Defendant should also receive a
decrease in the offense level by **-1** for timely notifying the government. §
3E1.1(b). At sentencing, the government will make the appropriate motion for
the one-point reduction.

Because the defendant is a repeat and dangerous sex offender against minors,
there is an increase of **+5** levels. § 4B1.5. The defendant reserves the right to
object to the application of § 4B1.5.

The total adjusted offense level for Count One of the Indictment is **44** if the
§ 4B1.5 enhancement applies and **39** if it does not apply.

## Criminal History Category

The parties acknowledge and agree that the estimation regarding Defendant's
criminal history is tentative. Defendant acknowledges that the criminal history
will be further investigated by the United States Probation Department and
ultimately determined by the Court. Defendant further acknowledges that any
additional facts regarding the criminal history can greatly affect the final guideline
range and result in a longer term of imprisonment. Based upon the facts known
at this time regarding Defendant's criminal history, the parties believe that
Defendant falls within Criminal History Category ("CHC") I. § 4A1.1.

The career offender adjustment tentatively does not apply. § 4B1.1.

## Guideline Ranges

The guideline range resulting from the estimated offense level of **44** and the
estimated criminal history category of I is **life**. The imprisonment range is life from
the bottom of CHC I to the top of CHC VI. The guideline range resulting from the
estimated offense level of **39** and the estimated criminal history category of I is
**262-327**. The imprisonment range is **262-327** from the bottom of CHC I to **360-
life** at the top of CHC VI. The guideline range would not exceed, in any case, the
statutory maximum of **360** months imprisonment applicable to the count of
conviction.

Pursuant to § 5E1.2, assuming the estimated offense level of **44** or **39**, the fine

range for this offense would be $50,000 to $500,000, plus applicable interest and penalties.

Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

//

//

//

//

//

//

//

//

//

//

//

//

## VII. **ENTIRE AGREEMENT**

This document states the parties' entire agreement. There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this Plea Agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 8-15-22

STEVEN PATRICK MCCONNELL
Defendant

Date: 8/15/22

Natalie Stricklin
Attorney for Defendant

Date: 8/15/22

Melissa Hindman
Assistant U.S. Attorney